### WHITE & SMITH v. SAVERY ET AL.

1. **Partnership: INDEBTEDNESS TO PARTNER.** An action on a claim due a firm may be maintained in the firm name, although one of the partners may be entitled to the proceeds if the claim itself has not been applied to extinguish the debt due such partner.

2. ———: **BAR TO ACTION.** The dismissal of an action on the ground that the plaintiff cannot maintain it in his individual name, is not a bar to an action for the same cause in the firm name.

3. **Trust: ACTION TO FORECLOSE.** Where a deed of trust was executed to secure advances to be made, and plaintiffs, among others, made such advances, *held*, that although parol evidence was necessary to show that plaintiffs had made the advances, yet it was competent for them to maintain an action to foreclose the deed of trust, the refusal of the trustees to do so being averred.

*Appeal from Polk District Court.*

THURSDAY, APRIL 10.

ACTION to foreclose a deed of trust executed by the defendants Savery and wife to secure an alleged loan of money. The defendants deny that any money was loaned; deny that the plaintiffs are the real parties in interest; plead a former adjudication and the statute of limitations. There was a judgment and decree for plaintiffs. Defendants appeal.

*Wright, Gatch & Wright* and *J. B. Bissell*, for appellants.

*Phillips, Goode & Phillips*, for appellees.

ADAMS, J.—I. The deed of trust was executed to secure a conditional obligation in writing drawn for the sum of sixty thousand dollars. It was a part of a scheme devised to raise money by loan from various individuals to secure the erection of a hotel in the city of Des Moines. The individuals pro- · posing to loan money for such object, among whom were the plaintiffs, appointed three persons as their attorneys, agents or trustees, with power to receive their money and make such loan. The obligation for sixty thousand dollars was executed to these agents. No money, at the time of its execution, appears to have been loaned to Savery, but it was executed in contemplation that money would be loaned to him under the arrangement entered into, and it bound Savery for the repayment of such amount of money as should be received by him, with ten per cent interest, payable annually. The plaintiff White, among others, became a subscriber to the loan, and advanced to Savery, as it is claimed, and as we think the evidence shows, one thousand dollars through the said agents, and took their certificate to the effect that "he is the owner of one thousand dollars in said loan." The plaintiffs, White & Smith, as a firm, became subscribers to the loan, and advanced to Savery, as it is claimed, and as we think the evidence shows, one thousand dollars through the said agents, and took a similar certificate.

Afterward, in an action brought by one Sypher against the defendant to enforce the payment of a portion of the money secured by the deed of trust, the plaintiff Smith intervened, claiming to be the owner of the certificate issued to White, and also of the certificate issued to White & Smith. The court held that the evidence showed that White & Smith owned both certificates, and Smith's petition for intervention was dismissed without prejudice. The defendants now claim that whatever the evidence in that case might have shown, the evidence in this case shows that Smith was the owner and not the firm. They claim, also, that the plaintiff's petition shows the same thing. The evidence upon which they

rely is the testimony of White, which is to the effect that he has no interest in the action. The averment in the petition upon which they rely is that Smith is the real party in interest, and entitled to the proceeds and profits of the loan.

We will consider in the first place whether the plaintiffs must fail by reason of their averment. The petition shows elsewhere that the firm became the owner of the certificate issued to White, and so was the owner of both certificates. It does not show that either was sold, indorsed or otherwise transferred to Smith individually. The averment, then, that Smith is the real party in interest may be taken with the qualification that there was no sale, indorsement or transfer to him individually, and the averment with the qualification may be understood as indicating that, while there had been no such transfer as to divest the firm of its legal or equitable title, such was the state of the accounts between the partners that Smith was entitled to all the proceeds of the claim. Such appears to have been the real fact.

1. PARTNER-SHIP: indebtedness to partner.

The evidence shows that the partnership of White & Smith was dissolved; that all the assets, including the claim in question, would necessarily be exhausted in discharging the obligations of the firm to Smith, and that the assets had been left in the hands of Smith for the purpose of paying him. He was the real party in interest, in the sense that he held and controlled the claim, and, as between him and White, was entitled to the proceeds of it. But as against Savery, White is a proper party plaintiff, because the claim had not been applied in the extinguishment of any part of the liability of the firm to Smith. To show that it had not been applied we refer to the testimony of Smith, who says:

"Whatever amount I may receive by way of recovery in this suit would apply on the indebtedness, according to the terms of the contract already set out."

The contract referred to is the contract of dissolution. It provides that Smith shall have control of the assets, and

"shall apply the proceeds thereof to the payment of partnership debts." No application could have been made of the claim, if there were still to be made an application of the proceeds. This view is in accord with *Sypher v. Savery*, 39 Iowa, 258 (266). Whatever apparent discrepancy there may be in the testimony we think can be easily reconciled.

II. The former adjudication pleaded is that which took place upon Smith's petition for intervention. But that petition having been dismissed merely upon the ground that he was not entitled to maintain an action in his individual name, the adjudication, we think, is not a bar to an action in the firm name.

2. ——: bar to action.

III. The defendants maintain that the action was brought upon a parol contract, and was not brought within five years from the time the cause of action accrued, and is, therefore, barred by the statute of limitations. We think the action is brought upon the conditional obligation executed to the agents or trustees. The instrument is set out in the petition, and it is competent for the plaintiff to maintain an action upon it, if any person can, though not expressly named in it, it being averred in the petition that the agents or trustees refuse to bring the action. Indeed, we do not understand that any question is raised upon this point. The position taken by the defendants is that the action is not brought upon the instrument, but upon a parol contract, and that from the necessity of the case. The argument is that the instrument shows upon its face that it was given for advances yet to be made, and is, therefore, not evidence that any have been made. To show that they have been made parol evidence alone is relied upon. Therefore it is insisted that the action is brought upon a parol contract.

3. TRUST: action to foreclose.

In our opinion the reasoning is not sound. The ground of action is the promise to repay. Proof of a loan might be made to raise an implied promise to repay in the absence of an express promise. In this case proof of a loan was necessary to bring the plaintiffs within the conditions of the express

promise, and make them a party to it; but, whether the promise be express or implied, it constitutes the ground of action. When it is expressed in writing the action should be brought upon the writing.

We come next to inquire whether the action is barred by the ten years' limitation. By the terms of the writing upon which we regard the action as brought the money was made payable in five equal annual payments, the first payment to be made in two years from the occupation of the building. The evidence shows that a portion of the building, to-wit: the portion designed for business rooms or stores, was occupied as early as 1858. But on the 22d of April, 1857, and before the money in question had been advanced, the agents of the subscribers to the loan entered into a written agreement with Savery whereby it was provided that, as some of the subscribers had failed to advance money according to their subscriptions, Savery should have the right to lease the business rooms of the building at any time, and that the loan should commence to draw interest only with the completion and occupation of that part of the building constituting the hotel; and that the principal of the loan should only be required in two, three, four, five and six years from such completion and occupation. As to when it was completed and occupied Savery testified in these words: "About one-half of the hotel part was not completed or occupied until the year 1866, about the first of the year." We do not find this testimony disputed. We may, then, regard the first installment as becoming due on the 1st day of January, 1868. It follows that no part of the claim is barred.

IV. The defendants complain of the admission in evidence of certain books of account to prove the loan of the money. If there were error in this we think it was without prejudice. White testifies positively to the loan, and his evidence does not appear to be contradicted. The fact of the loan, then, was established independently of the books.

V. Decree was entered June 27, 1877, for six thousand

two hundred and eighty-seven dollars and fifty cents. It is insisted by the defendants that the amount is too large. By contract the money loaned was to bear ten per cent interest, and was, as we have seen, to commence bearing interest with the completion and occupation of that part of the building constituting the hotel, which was January 1, 1866. The interest was made payable annually, and the delinquent interest would draw interest. *Preston v. Walker*, 26 Iowa, 205. But the contract to pay interest upon delinquent interest being merely an implied contract, the delinquent interest would draw only six per cent simple interest. We find the amount due at the time the decree was entered to be five thousand and twenty-three dollars and twenty-three cents. The decree is, then, too large by one thousand one hundred and sixty-four dollars and twenty-seven cents, and it should be modified by the deduction of that amount.

MODIFIED AND AFFIRMED.