KREUTZER & WASEM, Appellants, v. C. H. REESE et al., Appellees.

**PARTIES:** Real Party in Interest—Partnership Accounts. Evidence reviewed, and held to show that a claim was properly brought in the name of a partnership, notwithstanding inadvertent testimony by one of the partners that the claim belonged to him.

*Appeal from Hardin District Court.*—E. M. McCALL, Judge.

DECEMBER 13, 1919.

ACTION at law to recover $461.31, balance alleged to be due on a lumber bill. Trial to the court without a jury. At the trial, plaintiffs dismissed as to defendant Fannie Reese. At the close of plaintiffs' testimony, the defendant moved for a verdict and judgment in his favor, on the

ground that plaintiffs were not the real parties in interest, and could not, therefore, maintain the suit, which motion was sustained, and judgment rendered against plaintiffs.    The plaintiffs appeal.—*Reversed and remanded.*

*George W. Ward,* for appellants.

*Lundy, Peisen & Soper,* for appellees.

PRESTON, J.—1.    The trial of this case was had March 14, 1918.    The account sued on was started in August, 1911, and the last item is about March 12, 1912.    There is no question but that the lumber was sold by the firm.    The petition, filed March 10, 1917, alleges that plaintiffs are a partnership, engaged in the lumber business under the firm name and style of Kreutzer & Wasem, and that the balance due on the account is still the property of the plaintiffs herein.    The answer is in general denial, and they deny that they have received the merchandise, as claimed. It is alleged further by defendants that they purchased certain lumber from the plaintiffs, and that there was a dispute as to the quality of the lumber furnished, and, about December 16, 1911, the plaintiffs and defendants compromised and settled, and defendants paid plaintiffs, in full, the amount agreed upon.    They further alleged that the plaintiff's claim was barred by the statute of limitations, more than five years having elapsed.    For further answer, and by way of offset, defendants claimed that plaintiffs represented that the woodwork was thoroughly seasoned and shrunk; that the material was not as represented; and that plaintiffs did not ship the lumber in one consignment, as agreed, thereby causing defendants delay; and that, by reason of such matters, the defendants have been damaged in the sum of $500.    These matters are denied in the reply. No evidence was introduced on behalf of defendants.

Mary Kreutzer, as a witness, gave testimony sustaining the allegations of the petition, as to the furnishing of the

lumber, etc., and speaks of the transaction as between defendant C. H. Reese and the firm of Kreutzer & Wasem. The abstract, as amended, shows that she was asked but one question in chief, as to the ownership of the account, as follows: •

"Q. Who is the owner of this account and claim against the defendant at the present time? A. I am."

On cross-examination, she said that she had been in the business about 36 years, and, for about 30 years, under the name of Kreutzer & Wasem; that, when her father left for California, she went in with her uncle; and that the old firm of Kreutzer & Wasem had been dissolved; that, when her uncle left for California, she took the book accounts.

"Q. They became your property? A. Yes. Q. So this claim is now yours? A. Yes, it is my claim. Q. How long since you quit being engaged in the lumber business? A. It was three years in July."

On being recalled, she testified that it was about three years since Mr. Wasem, of the firm, went to California, and about two years since Wasem and the witness were at the house of defendant C. H. Reese in regard to this claim; that he was in California, and came back to see what he could do towards settling some of the accounts.

"Q. You have an unsettled account or bank account, at the present time? (Objected to by defendant as incompetent, irrelevant, and immaterial under the issues of this case. Objections sustained. Plaintiffs except.) Q. You have testified that the books of accounts were turned over to you? A. That is, they were turned over in this way, that I should collect them. That included this account. Q. What, under your agreement [with Mr. Wasem] was to be done with the money collected on the accounts after it was collected, including the account in suit? (Objected to by the defendant as incompetent, irrelevant, and immate-

rial; not binding upon the defendants, and not a matter in issue in this case. Objection sustained, and the plaintiffs except.) Q. Has there ever been a formal dissolution of the firm of Kreutzer & Wasem? (Objected to as incompetent, irrelevant, and immaterial; calling for a conclusion and opinion of the witness, and not within the matters upon which the witness was permitted to be recalled. Objection sustained. Plaintiffs except.) Q. When you testified in chief, or on cross-examination, that the firm of Kreutzer & Wasem had been dissolved, what did you mean by that? A. I thought that meant, if we were still doing active business. Q. You also testified that the claim belonged to you; have you any explanation to make of that? A. One half of it belongs to me, and I didn't think it necessary to say that the other half belonged to Mr. Wasem. Q. If this account be collected from the defendant, to whom does it belong? A. I would deposit it in the Iowa Savings Bank, where we have an account in the name of Kreutzer & Wasem still open, where I have been depositing different accounts in making settlements. (Defendants move to strike the answer as incompetent, irrelevant, and immaterial and speculative. Motion sustained. Plaintiffs except.) Q. Have you and Mr. Wasem, as the firm of Kreutzer & Wasem, ever had a settlement—a final settlement between yourselves in regard to the accounts and matters due the firm? (Objected to as incompetent, irrelevant, and immaterial; calling for conclusion, and not a matter in issue. Objection sustained. Plaintiffs except.)

CROSS-EXAMINATION.

"Q. You understand, when I asked you the question that the account books became your property, that I was inquiring about the time Mr. Wasem left? A. Weren't they my property, as a member of the firm? You didn't ask me if they were my property alone. It was in part my property. It couldn't be otherwise than my property. You

didn't ask me if anybody else was connected with it. Q. You understand that I was asking you about the fact whether Mr. Wasem was interested in the property or not, didn't you? A. Yes. Q. And you answered that, when he went to California, you took the book accounts, didn't you? A. I did. Q. You intended by that to say to me that you took over the book account at that time, didn't you? A. Yes, I took them over. Q. You intended to say so, didn't you? A. Yes.

"The Court: Q. The question Mr. Lundy is asking you is whether you understand, when he asked this question, that the time he was referring to in his question was the time when your uncle went to California. You can answer that, yes or no. A. No. I didn't understand him. Q. What is your answer? A. I did not understand it.

"Mr Lundy: Q. What time did you understand I referred to? A. To the present time. Q. That is, they became your property at the present time,—is that what you intended to say? (No answer.)

"The Court: Q. Was it your thought that, to recover in this case, it was necessary for you to be the owner of the account this morning, when you were testifying? A. I didn't know how it would be in recovering the account; I don't know the law; I only thought it was an honest case, and that is all I thought about, and that is all I want now, is what is right and fair.

"Mr. Lundy: Q. When you answered the question, 'So the claim is now yours,' and you answered, 'Yes, it is my claim;' did you understand I was asking about the claim that is in suit in this case? The claim against C. H. Reese? A. I thought it was my claim,—that is, not alone, —and it is, part of it; I don't see how it can be otherwise. Q. What explanation can you offer for having said that this claim was yours and not telling that somebody else was interested in it, if there is anybody else interested in

it? A. Because I wasn't asked to. You didn't ask me if
there was anybody else besides myself. Q. Didn't you in-
tend to leave the impression with the court and with the
attorneys that this claim absolutely belonged to you? A.
No, sir, because it does not. Q. Wasn't that your intention
this morning? A. That was not my intention. If I made
that impression, it was not my intention. You can write a
letter tonight out to Mr. Wasem, and he will tell you the
same as I am telling you now."

The defendant C. H. Reese testified, as a witness for
plaintiffs, that Miss Kreutzer and Wasem were at his place
a year ago or so, in regard to the claim, and that he then
notified them that he was ready to return the leaded glass
which was a part of the property in controversy. Unques-
tionably, the title to the claim was in the firm at the time
the lumber and material were furnished. There is no evi-
dence that Wasem at any time parted with his interest
in the claim; no evidence of an assignment thereof to plain-
tiffs; no evidence that the partnership affairs had been
settled up, as between the partners, or that there had been
a formal dissolution of the partnership. Miss Kreutzer's
testimony that the claim belonged to her was in the nature
of a conclusion. It appears that the firm had ceased to
do business, and that one of the partners had gone away,
but had come back to help settle up the affairs,—and this,
too, after the alleged dissolution,—and that Miss Kreutzer
had possession of the accounts for collection. It is con-
tended by appellants that the testimony first given by
Miss Kreutzer was an inadvertence, and, in effect, that she
spoke of it as her claim, in the sense that she was man-
aging the settlement of the partnership affairs, and that,
taking the entire record, including her retraction or ex-
planation, the evidence shows that the firm still owned the
account. We are inclined to hold that it is so. We think
that, under the circumstances, the action can be main-

tained in the firm name, as the real party in interest, even though the firm ·was not, at the time of the trial, doing business. If there was any agreement or arrangement between the two partners, the nature of it is not shown. (*White & Smith v. Savery*, 50 Iowa 515; *Sypher v. Savery*, 39 Iowa 258; 20 Ruling Case Law 665, Sections 5 and 6; 30 Cyc. 659, 679, 680. In Ruling Case Law at the reference above given, it is said:

"To authorize a person to sue at law in his own name, it is generally considered that he must have the legal right or title to the matter or thing in controversy; and if there is a cause of action, a person who has no interest may sue in his own name, if he has the legal title. Courts of law will not, in general, notice equitable rights, as distinguished from the strict legal title and interest, so as to invest the equitable or beneficial claimant with the ability to adopt legal proceedings in his own name, even though the equitable right embraces the exclusive benefit to be derived from the cause of action. In many jurisdictions, statutes provide, with some few specified exceptions, that any civil action shall be maintained or brought in the name of the real party in interest. The purpose of such a statute is to relax the strict rules of the common law, so as to enable those directly interested in the subject-matter of the litigation to maintain the action, and the statute applies, whether the cause of action is at law or in equity. The statute should be so applied as to accomplish its salutary purpose. If a direct and substantial benefit accrues to persons severally, and they are the real parties in interest, they may maintain an action severally. It was not intended to give a new cause of action where none existed, but to simplify matters of pleading and procedure, and to adopt the rule in equity permitting all actions to be brought by the equitable or beneficial owner of the cause of action. This is not to be understood, however, as excluding one hold-

ing the legal title or right from suing in his own name. Such persons may sue as the real party in interest, if he can legally discharge the debtor, and the satisfaction of the judgment rendered will discharge the defendant although the amount recovered is for the benefit of another."

Miss Kreutzer, the party alleged to be the owner of this claim, is one of the two parties suing as a firm. The firm, or the firm by her, could satisfy any judgment that might be obtained in the name of the firm. If it be true that the other partner has now no interest in this **claim, he could not** hereafter make any further claim against the defendant, and, the suit having been brought by Miss Kreutzer in the name of the firm, both she and the **firm would be bound.** Concededly, on defendant's own theory, she has an interest. It might be to the advantage of the **defendant that the** suit should be maintained in the name of the firm. The first reference above given in Cyc. states: **"It is often said** that a partnership continues, even after dissolution, for the purpose of winding up its affairs." And at page 679, the text reads, that, if actions by partners "are brought to enforce claims acquired by the firm, before dissolution, they may and should be brought by all the partners, unless one or more of them have become the exclusive owners, and the action is brought in a jurisdiction where the assignee of a claim may sue in his own name." In the instant case, we have only the conclusion of the witness that she was the owner of the claim, and that was retracted or explained. The only proper inference to be drawn from all the evidence is, we think, that, the firm having quit business, Miss Kreutzer is collecting the claims owed to the firm in order to wind up the business. As said, it is not shown that she has purchased the interest of the other partner, nor has he assigned his interest in the business to her. It may be necessary hereafter to have an accounting, as between the partners, but that, we think, is

not in this case. The creditors, of course, have the first claim on collections or assets of the firm. In the *Sypher* case, supra, at page 266, it appeared that there was an arrangement between the partners, upon the dissolution of the firm, that one of them was left in charge of the assets of the business; but the firm was to exist as to unsettled business, and the party left in charge of the assets was to do whatever might be necessary in closing up the business. The evidence failed to show any transfer to the party left in charge of the books, but indicated that the claims were held by him, and as a part of the partnership assets. The court said:

"The property in these claims being in the firm of White & Smith, they are the real parties in interest, and an action against defendant cannot be prosecuted in the name of one of the partners."

In the *White* case, supra, it was held that an action on a claim due a firm may be maintained in the firm name, although one of the partners may be entitled to the proceeds, if the claim itself has not been applied to extinguish the debt due such partner. The details of whatever arrangement there was between the partners was gone into more fully in the two cases just referred to than in the present case.

2. We think objections to evidence as before set out should not have been sustained. The evidence sought to be brought out would have a bearing on the question as to whether the claim did, in fact, belong to Miss Kreutzer. Apparently, appellee seized on the statement of Miss Kreutzer that she was the owner, as a basis for cross-examination. Having gone into it, other matters on the same subject should have been permitted on re-examination, or recall, in order to get at the real truth of the matter.

For the reasons given, we think the judgment ought to be reversed.—*Reversed and remanded.*

LADD, C. J., EVANS and SALINGER, JJ., concur.